IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MESA UNDERWRITERS SPECIALTY | § | |
| INSURANCE COMPANY | § | |
| | § | |
| VS. | § | NO. 1:19-cv-0001-RP |
| | § | |
| GONZALES PLUMBING COMPANY | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff Mesa Underwriters Specialty Insurance Company's Motion for Partial Summary Judgment (Dkt. No. 42); Defendant Gonzales Plumbing, Inc.'s Response (Dkt. No. 43); Defendant NIBCO, Inc.'s Response (Dkt. No. 44); and Plaintiff's Combined Reply (Dkt. No. 45). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

**I. BACKGROUND**

This is an insurance coverage declaratory judgment action. Mesa Underwriters Specialty Insurance Company (MUSIC) seeks a declaration that it does not have a duty to defend or indemnify Gonzales Plumbing, Inc. against claims asserted against Gonzales by NIBCO, Inc., in two underlying state court suits. For each of the years 2012 to 2016, MUSIC issued a commercial liability policy to Gonzales.[1] MUSIC asserts that the earliest three of these policies exclude liability arising from new construction of residential homes, and that the underlying suits involve claims relating to new home

---

[1]MUSIC issued four one-year policies to Arturo Gonzales and Gonzales Plumbing, Inc. spanning September 2, 2012 through September 2, 2016. MUSIC only moves for summary judgment on the first three policies.

construction, thereby negating MUCIC's duty to defend or indemnify Gonzales. Gonzales asserts that the exclusion for liability arising from new construction of single-family or tract homes only applies where the total project or development exceeds ten homes. Gonzales maintains that the claims in the underlying suits allege plumbing failures in newly constructed homes, but there is no mention of the size of the project or development for all of the affected homes. Thus, Gonzales argues, the exclusion does not apply. NIBCO, filing its own Response, concurs with this argument, and adds three additional arguments regarding the applicability of the exclusions. Because the Court finds that MUSIC has failed to carry its burden, the motion for partial motion for summary judgment should be denied.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does

2

exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

**A.  Duty to Defend**

Under Texas law, courts follow the "eight corners" rule to determine whether an insurer has a duty to defend a suit. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). "Under this rule, courts compare the words of the insurance policy with the allegations of the plaintiff's complaint to determine whether any claim asserted in the pleading is potentially within the policy's coverage." *Id.* "The duty to defend analysis is not influenced by facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004). Rather, it is determined by examining the four corners of the pleadings and of the policy. *Zurich Am. Ins. Co. v. Nokia, Inc.,* 268 S.W.3d 487, 491 (Tex. 2008).

All doubts with regard to the duty to defend are resolved in favor of the duty. *Id.* Courts applying the eight corners rule "give the allegations in the petition a liberal interpretation." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Courts must not, however, "read facts into the pleadings . . . look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id.* at 142. The insured has the burden of showing that a claim is potentially within the coverage of the policy. *Federated Mut. Ins. Co.*, 197 F.3d at 723. "However, it is the insurer that carries the burden of establishing that 'the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the

3

confines of the eight corners rule." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). "Exclusions [in the insurance policy] are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008).

"Unlike the duty to defend, which can be determined at the beginning of a lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co., Inc.*, 647 F.3d 524, 531 (5th Cir. 2011). However, a Court may grant summary judgment on the indemnification claim when "the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Federal Ins. Co. v. Singing River Health System*, 850 F.3d 187, n.6 (5th Cir. 2017) (citing *Farmers Texas County Mutual Ins. Co. v. Griffin*, 955 S.W.2d 81, 82, 84 (Tex. 1997)).

**B.  Background**

The parties agree to the following facts as taken from their pleadings. Christianson Air Conditioning and Plumbing, LLC sued NIBCO, Inc. and others in Travis County state court in November 2016. Christianson seeks damages stemming from plumbing system water leaks in hundreds of residential homes, due to the failure of PEX plumbing pipe manufactured by NIBCO. Continental Homes of Texas, L.P., the home builder that retained Christianson as its plumbing subcontractor, intervened in that lawsuit in January 2017. The case was removed to federal court and NIBCO, Inc. filed a third-party complaint against numerous subcontractors (including Gonzales) that allegedly installed the pipe. The parties agree that NIBCO's third-party complaint is the "active" pleading with respect to claims asserted directly against Gonzales.

The federal case was remanded to state court on July 7, 2017. On February 1, 2018, as a result of various motions to transfer venue, the Travis County court severed certain claims and parties into a separate suit, and transferred that to Williamson County, Texas. The two cases are styled *Christianson Air Conditioning and Plumbing, LLC, v. NIBCO, Inc., et al.*, in the 419th Judicial District Court of Travis County, Texas, Cause No. D-1-GN-16-005797, and *Continental Homes of Texas, L.P. v. NIBCO, Inc. et al.*, in the 368th Judicial District Court of Williamson County, Texas, Cause No. 18-0450-C368. Thus, the claims by NIBCO against Gonzales (originally raised in a third-party complaint while the case was pending in federal court) are now divided among the Travis and Williamson County lawsuits. The other active pleadings in those lawsuits are Christianson's Third Amended Petition (Travis County) (Doc. 42-4) and Continental Homes of Texas, L.P.'s Fifth Amended Petition (Williamson County) (Doc. 42-5).

**C.     Application of Policy Exclusions**

MUSIC argues that the residential construction exclusions in the three earliest Gonzalez policies preclude coverage for property damage "arising out of" or connected in any way to new residential construction. It notes that courts generally give the language "arising out of" a broad construction, requiring only that the claim bear some incidental relationship to the identified condition for the exclusion to apply. *See Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003); *EMASCO Ins. Co. v. American Int'l Specialty Lines Co.*, 438 F.3d 519, 524-25 (5th Cir. 2006). The first of the three policies at issue contains a New Residential Construction Exclusion that states:

> The insurance under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damage arising out of inadequate, improper, faulty or defective construction, and no duty to defend is provided by us for claims, "suits", actions, accusations or charges, nor for any loss,

5

cost or expense arising out of, relating to or in any way connected with "your work," or "your product" involving:

1. Development or

2. "New construction" of the following:

    a. apartments;
    b. condominiums;
    c. town homes; or
    d. any single-family or tract homes where the total project or development exceeds 10 homes, whether by an insured, an entity to which an insured owes an indemnity obligation, or any other entity

Dkt. No. 42-6, Bates no. 304. The policies for the next two years contain a similar endorsement exclusion:

I. This insurance does not apply to "Bodily injury", "Property damage", "Personal and advertising injury", or any other injury, loss or damage in any way connected with or arising out of "new residential construction" of any of the following:

    A. "apartment" or "apartment building";
    B. "condominium" or "cooperative";
    C. "town house"; or
    D. "single family house"

whether such "New Residential Construction" is or was performed by an "Insured", a person or entity to whom an "Insured" owes an indemnity obligation has agreed to indemnify or hold harmless, a person or entity to whom an "Insured" is contractually obligated to add to this policy as an "Additional Insured," or any other person or entity.

This exclusion does not apply to new construction if the total number of "single family houses" within a "development" does not exceed (10) individual units of "new residential construction".

Dkt. No. 42-7, Bates nos. 364-365; Dkt. No. 42-8, Bates nos. 175-176.

The parties dispute whether these exclusions are triggered by NIBCO's pleadings. MUSIC asserts that:

the allegations in the Travis and Williamson County lawsuits leave no doubt that the liability of Gonzales, if any arises from new residential construction of homes. On the face of the pleadings, the new residential construction exclusions eliminate any duty to defend Gonzales . . . .

Dkt. No. 42 at 8. Gonzales responds that the exclusions only preclude coverage to new residential construction where the total project or development exceeds 10 homes, and asserts that while the allegations in the suits involve "newly constructed homes," they "make no mention of the size of the project or development where each of the homes affected is located." Dkt. No. 43 at 9. NIBCO concurs, arguing that to meet its burden of proof that the claims are excluded, MUSIC must prove that all allegations concern developments or new construction "where the total project or development exceeds 10 homes." NIBCO relies on cases holding that if a complaint potentially contains a covered claim, the insured must defend the entire suit. *Zurich,* 268 S.W.3d at 490.

The relevant allegations are contained in NIBCO's Third Party Complaints in what are now the two underlying state court suits. In its complaint, NIBCO alleges:

> During the period from late 2007 to late 2012, Christianson employed and/or entered into subcontract agreements with Third-Party Defendants, as well as others, as subcontractors to assemble and install plumbing systems and NIBCO's PEX as a component of those systems *in houses, including those being built by Continental, in the greater San Antonio area*.

Dkt. No. 42-3 at ¶ 24 (emphasis added). And Christianson's state court petition pleads:

> This lawsuit arises out of *mass, widespread* leaks and failures in residential plastic pipe made, manufactured, marketed, sold and distributed by NIBCO, Inc. The failing pipe has caused millions of dollars in damage to homeowners, builders and plumbing installers who were unaware of the pipe defects until years after the pipe had been installed and in operation *in thousands and thousands of homes in a multitude of residential subdivisions* across the State of Texas.

\* \* \*

> Christianson, a plumbing installer and subcontractor to a number of residential home builders, installed NIBCO PEX tubing pursuant to certain subcontract agreements to

7

> install plumbing pipe and fixtures for residential potable water systems *in new homes being built by many Texas home builders* including, but not limited to, Continental Homes of Texas (formerly, D.R. Horton), Lennar Homes of Texas, Sitterle Homes, KB Homes . . . .

Dkt. No. 42-4 at ¶¶ 1, 4. As can be seen, none of these allegations make any statement about the size of the subdivisions in issue. The closest the pleadings come to identifying the number of homes in a development is reference to "thousands and thousands of homes in a multitude of residential subdivisions." *Id.* at ¶ 1. Without knowing how many subdivisions were involved, only that there was a "multitude," even the reference to "thousands and thousands" of homes does not compel the conclusion that all of Gonzales' installations involved subdivisions containing more than ten houses.

To bolster its argument, MUSIC points to allegations in Continental Homes' Fifth Amended Petition in the Williamson County case. These pleadings refer to the fact that there are "4,000 different leaks in over 1,000 different homes" and that the pipes were used in "multiple subdivisions." Dkt. 45 at 2 citing Dkt. No. 42-5 at ¶¶ 17, 27, 30, and 58. MUSIC maintains that Gonzales and NIBCO "want the court to draw the unreasonable inference from the underlying pleadings that the more than 1,000 affected homes built by homebuilder [Continental] were divided among 'micro-developments' of ten homes or less . . . equating to one hundred or more individual developments." Dkt. No. 45 at 3. But that is not the relevant question. Rather, applying the eight corners rule, the question is whether the Court can conclude from the relevant language that all of the new homes in which Gonzales did plumbing installations were in developments with more than 10 homes. Construing the policy exclusions narrowly and drawing all reasonable inferences in favor of Gonzales, as the Court must, it is reasonable to infer that some of the homes Gonzales plumbed were in smaller developments. This is sufficient to invoke MUSIC's duty to defend under the policies. *Gore,* 538 F.3d at 370.

The language of the pleadings in the underlying cases does not plainly trigger the exclusion on which MUSIC's summary judgment motion relies. MUSIC is therefore not entitled to summary judgment.[2]

## IV. RECOMMENDATION

The Court **RECOMMENDS** that the District Court **DENY** Plaintiff Mesa Underwriters Specialty Insurance Company's Motion for Partial Summary Judgment (Dkt. No. 42). **IT IS FURTHER ORDERED** that this case be removed from the docket of the undersigned and returned to the docket of the Honorable Robert Pitman.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C);

---

[2]Given this conclusion, the Court need not address the significance of the fact that the ten-home requirement is contained in an exception to an exclusion. *See Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Further, because the Court finds that MUSIC is not entitled to summary judgment regarding its duty to defend the underlaying claims, the issue of MUSIC's duty to indemnify Gonzales is not justiciable at this juncture. *See Farmers,* 955 S.W.2d at 82.

9

*Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 13th day of April, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE